# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

_____

JEANITTA SMITH,
        Plaintiff

    vs                                 Case No. C-1-03-729
                                       (Hogan, M.J.)

MEYER BUILDERS, et. al.,
        Defendants

_____

## ORDER
_____

This matter is before the Court on Defendants' Motion for Summary Judgment (Doc. 40), Plaintiff's Memorandum in Opposition to Summary Judgment (Doc. 44), and Defendants' Reply thereto (Doc. 48).

## BACKGROUND

Plaintiff was employed by Defendant Meyer Builders as a sales consultant from November 1, 2001 to March 13, 2002. (Doc. 8, Amended Complaint, at ¶ 5). Defendants Meyer Builders and Douglas Homes are custom and production builders of new homes in the Greater Cincinnati area. (Id. at ¶6). Defendant Douglas Meyer is an owner and partner in Meyer Builders and Douglas Homes. (Id. at ¶ 7). While supervised by Douglas Meyer and Brian Weichert, Plaintiff spent, on average, 36 hours per week at her sales model where she met with potential home buyers. (Deposition of Jeanitta Smith, at 113-14). Once per week, Plaintiff attended office meetings with Meyer, Weichert and other supervisory personnel and sales representatives.

Plaintiff showed homes in several Meyer subdivisions for four months, commencing in November, 2001. She submitted paperwork, including initial

purchase contract worksheets, for about a dozen potential home sales.  During this time, conflicts arose between Plaintiff and her supervisors concerning some of her paperwork and representations to potential buyers. Plaintiff's supervisors, Meyer, Weichert and Jack Tatusko believed Plaintiff was offering free upgrades and options to home buyers without authorization, as required under company policy.  Plaintiff contends that any paperwork deficiencies were caused by inadequate training and was either negligent or accidental, but not intentional.  On March 13, 2002, a meeting took place between Meyer, Tatusko, Weichert, Carol Bridges and Plaintiff.  (Smith Dep. at 194).  During this meeting, the parties discussed Plaintiff's contract with potential home buyers, Sherry and Jammie Xie.  After this meeting, Plaintiff's employment with Defendant came to an end.

Thereafter, on August 28, 2002, Plaintiff file a complaint with the Equal Employment Opportunity Commission (EEOC), alleging that she had suffered sexual discrimination, retaliation and harassment.  (Doc. 1, Complaint, Ex. A).  On October 23, 2003, Plaintiff filed her Complaint in this matter.  (Doc. 1, Complaint).  Plaintiff later amended her Complaint to assert claims including: discrimination, harassment and hostile environment based on sex (Count One); retaliation (Counts Two & Four); harassment and hostile environment based on race (Count Three); Breach of Contract (Count Five); Promissory Estoppel (Count Six); Unjust Enrichment (Count Seven); Wrongful Termination (Count Eight).  (Doc. 8).

Plaintiff asserts that she was subjected to unwelcome sexual harassment which was both severe and pervasive and which interfered with her ability to perform her job.  Plaintiff contends that the harassment from which she suffered took the form of both verbal comments and unwanted physical contact. Plaintiff alleges that Meyer made several sexually offensive remarks at the weekly sales meetings as well as other times during her nearly five months in his employ.  Plaintiff cites eighteen specific incidents over a four and one-half month period, some of which did not involve Plaintiff directly. Plaintiff further testified that Defendant Doug Meyer had a "generic way of just bringing sex into everything." (Smith Dep. at 87).  Some of the incidents which Plaintiff claims created a hostile environment based on sex included: 1) repeated offensive and vulgar remarks by Defendant and other male coworkers such as "suck my dick," "fuck you," "asshole;" 2) repeated graphic conversations between Meyer and a male co-worker regarding the sexual activities of a male co-worker; 3) repeated derogatory comments by Defendant Meyer regarding women, such as "all women are bitches," and "are you on the rag;" 3) two incidences of forcing Plaintiff to give Defendant Meyer a hug; 4) telling Plaintiff to wear tighter sweaters; 5)

Defendant Meyer telling Plaintiff she should work on her sex appeal to increase her sales; and 6) spending a significant amount of time during an office meeting discussing how many tampons were required to clog a drain.

Plaintiff also asserts that she was retaliated against for reporting sexual harassment and for protesting alleged Fair Housing Act Violations and racial discrimination. Finally, Plaintiff brings claims for hostile environment based on race, breach of contract, unjust enrichment, detrimental reliance and unlawful termination in violation of public policy.

Defendants contend that summary judgment should be granted in their favor with respect to all of Plaintiff's claims. Defendants argue that the alleged sexual harassment was insufficiently severe and/or pervasive to constitute a violation of Title VII. Defendants argue that much of the alleged verbal conduct was not directed at Plaintiff nor was the conduct based on gender. Defendants further assert that Plaintiff lacks standing to assert Fair Housing Act violations on behalf of third parties. Defendants contend that Plaintiff's claims that she was discharged in retaliation for reporting Fair Housing Act violations, as well as alleged racial discrimination, were merely a "red herring" for Plaintiff's failure to follow company policies. Defendants argue that Plaintiff's breach of contract claim fails because she was an at-will employee, terminable at any time without cause. Moreover, Plaintiff's common law public policy wrongful discharge claim fails because Plaintiff has already sought relief under federal law. Finally, Defendants argue that, because discovery has been completed, Plaintiff now must elect her remedies rather than maintaining both contractual claims as well as quasi-contractual claims.

## OPINION

A party may move for summary judgment on the basis that the opposing party will not be able to produce sufficient evidence at trial to withstand a motion for judgment as a matter of law. In response to a summary judgment motion properly supported by evidence, the non-moving party is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial. *Sixty Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987); *Harris v. Adams*, 873 F.2d 929, 931 (6th Cir. 1989). Conclusory allegations, however, are not sufficient to defeat a properly supported summary judgment motion. *McDonald v. Union Camp Corp.*, 898 F.2d 1155, 1162 (6th Cir. 1990). The non-moving party must designate those portions of the record with enough specificity that the Court can readily identify those facts upon which the non-

moving party relies.  *Karnes v. Runyon*, 912 F. Supp. 280, 283 (S.D. Ohio 1995)(Spiegel, J.).  "[A]fter a motion for summary judgment has been filed, thereby testing the resisting party's evidence, a factual issue may not be created by filing an affidavit contradicting [one's own] earlier deposition testimony." *Davidson & Jones Dev. Co. v. Elmore Dev. Co.*, 921 F.2d 1343, 1352 (6th Cir. 1991).

The trial judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine factual issue for trial. *Anderson*, 477 U.S. at 249-50.  In so doing, the trial court does not have a duty to search the entire record to establish that there is no material issue of fact.  *Karnes*, 912 F. Supp. at 283.  *See also Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989); *Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir. 1988).  The inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.  *Anderson*, 477 U.S. at 249-50.

If, after an appropriate time for discovery, the opposing party is unable to demonstrate a *prima facie* case, summary judgment is warranted.  *Street*, 886 F.2d at 1478 (citing *Celotex* and *Anderson*).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## Hostile Environment Sexual Harassment

Title VII provides that "[i]t shall be unlawful employment practice for an employer to discharge any individual, or otherwise to discriminate against an individual with respect to his compensation, term, conditions, or privileges of employment, because of such individual's . . . sex. . . ."  42 U.S.C. § 2000e-2(a)[1]  Courts recognize two types of sexual harassment claims.  The first type, *quid pro quo*

---

[1] Federal case law interpreting Title VII is applicable to claims asserted under Ohio Rev. Code § 4112.02.  *See Ohio Civil Rights Comm'n v. Ingram*, 630 N.E.2d 669 (Ohio 1994); *Little Forest Med. Center of Akron v. Ohio Civil Rights Comm.*, 575 N.E.2d 1164 (Ohio 1991); *Osman v. Isotec, Inc.*, 960 F. Supp. 118, 120-21 (S. D. Ohio 1997)(Dlott, J.).  Accordingly, this Court's opinion with respect to Plaintiff's Title VII claims applies with equal force and effect to Plaintiff's discrimination claims asserted under the Ohio civil rights statute.

harassment, occurs when a supervisor demands sexual favors as a condition for job benefits, which may be non-economic as well as economic benefits. The second type, referred to as "hostile environment" sexual harassment occurs when the harassment creates a hostile or abusive working environment. *See Kauffman v. Allied Signal Inc., Autolite Div.*, 970 F.2d 178, 182 (6th Cir. 1992), *cert. denied*, 506 U.S. 1041 (1992); *Fleenor v. Hewitt Soap Co.*, 1995 WL 386793, at * 2 (S.D. Ohio Dec. 21, 1994)(Rice, J.), *aff'd*, 81 F.3d 48 (1996). Under a hostile environment theory, liability for sexual harassment may be imposed even where there is no direct solicitation for sexual favors from the plaintiff. *Id.* In this case, Plaintiff has raised a claim for hostile environment.

The elements of a hostile environment sexual harassment claim are set forth in *Meritor Savings Bank v. Vinson*, 477 U.S. 57 (1986), and further refined in *Harris v. Forklift Systems*, 510 U.S. 17, 114 S. Ct. 367 (1993). *See also Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75 (1998). In order to recover on a hostile environment claim, Plaintiff must demonstrate that: (1) she is a member of a protected class; (2) she was subjected to unwelcome sexual harassment; (3) the harassment complained of was based on sex; (4) the harassment had the effect of unreasonably interfering with Plaintiff's work performance and created a working environment that was intimidating, hostile, or offensive; and (5) a basis for employer liability exists. *Fleenor v. Hewitt Soap Co.*, 81 F.3d 48 (6th Cir. 1996), *cert. denied*, 117 S. Ct. 170 (1996).

Defendant offers no argument with respect to the first, second and fifth elements. Rather, Defendant contends that Plaintiff cannot establish the third and fourth elements. Defendant contends that the evidence fails to demonstrate that Defendants subjected Plaintiff to discriminatory harassment based on her gender. Further, Defendants argue that the alleged conduct was not sufficiently severe or pervasive.

With respect to the third element, Defendant claims that the alleged comments about which Plaintiff complains, while certainly vulgar, are merely flippant remarks which are not necessarily connected to the sexual acts to which they make reference. *See Lack v. Wal-Mart Stores, Inc.,* 240 F.3d 255, 261 n.8 (4th Cir. 2001); *see also Johnson v. Hondo, Inc.* 125 F.3d 408, 412 (7th Cir. 1997). Plaintiff, in response, argues that the harassment was based on sex because the alleged comments by Defendant "go to the core of [a woman's] entitlement to a workplace free of discriminatory animus." *See Williams v. General Motors Corp.,* 187 F.3d 553, 563

(6th Cir. 1998).  Plaintiff argues that Defendant's use of the term "bitch" to describe women constitutes "sexual and sexist conduct."  *See Thomas v. Town of Hammonton,* 351 F.3d 103, 118, n.6 (3rd Cir. 2003).  Plaintiff further contends that Defendant, asking Plaintiff if she was "on the rag", was likewise based on her sex and contributed to a hostile work environment.  *See Slayton v. Ohio Dept. of Youth Services*, 206 F.3d 669, 678 (6th Cir. 2000).  Finally, Plaintiff's evidence indicates that Defendant subjected Plaintiff and other female workers to conduct to which male employees were not subjected, such as telling Plaintiff and a co-worker to stand up and turn around to gain his approval of their attire, telling Plaintiff to "[c]ome to daddy, give me hugs and kisses."[2]  Contrary to Defendant's assertions, Title VII does not require that the harassment complained of by Plaintiff must be sexual in nature.  Comments about Plaintiff's anatomy or the performance of sexual acts are not the only types of behavior that can create an intimidating, hostile and abusive working environment.  *Walk v. Rubbermaid Inc.*, 913 F. Supp. 1023, 1028 (N.D. Ohio 1994).  *See King v. Hillen*, 21 F.3d 1572, 1583 (Fed. Cir. 1994)(conduct based on the victim's sex is appropriate to consider, whether or not the conduct is sexual in nature); *Hall v. Gus Construction Co.*, 842 F.2d 1010, 1014 (8th Cir. 1988)(intimidation and hostility towards women because they are women can result from conduct other than sexual advances); *Carr v. Allison Gas Turbine Div., General Motors Corp.*, 32 F.3d 1007, 1011 (7th Cir. 1994)(if defendant had turned down the heat at plaintiff's work station in order to make her uncomfortable, that would be actionable conduct).  Defendant's alternate argument has slightly more merit in that much of the conduct was not directed specifically toward Plaintiff.  For example, Defendant asserts that many of the verbal exchanges which Plaintiff found so offensive occurred between Meyer and other male employees during the weekly sales meetings, within the hearing of the entire sales staff, including male employees.  Moreover, the entire sales staff was allegedly exposed routinely to Defendant's use of vulgar language.  While it is certainly arguable that male employees were also subjected to similar or the same conduct, albeit not all the conduct, of which Plaintiff complains, Plaintiff has presented enough evidence to make the resolution of this issue a factual determination, rather than so one-sided that resolution as a matter of law is in order.  Accordingly, the question of whether Defendant's conduct was based on sex, must be answered by the trier of fact.

---

[2] The examples used by the Court in its opinion, while not exhaustive, illustrate the crux of the conduct about which Plaintiff complains.

6

To satisfy the fourth *prima facie* element, Plaintiff must demonstrate that the workplace was permeated with discriminatory intimidation, ridicule, or insult sufficiently severe or pervasive to alter her employment conditions and create an abusive or hostile working environment. *Harris v. Forklift Systems*, 510 U.S. 17, 21 (1993)(citing *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 65 (1986)). *See also Crawford v. Medina General Hospital,* 96 F.3d 830, 834-35 (6th Cir. 1996); *Garcia v. ANR Freight System, Inc.*, 942 F. Supp. 351, 355-56 (N.D. Ohio 1996); *Washington v. City of Cleveland*, 948 F. Supp. 1301, 1308-09 (N.D. Ohio 1996). The harassment must be evaluated both objectively and subjectively. In other words, Plaintiff must subjectively perceive the work environment to be hostile or abusive, and the environment must be one in which a reasonable person could objectively conclude the same. *Id.* This question can only be answered by looking at the totality of the circumstances. *Harris*, 510 U.S. at 23.

In reviewing the totality of the circumstances, the Court may consider the following factors: (1) the frequency of the alleged discriminatory conduct; (2) the conduct's severity; (3) whether the conduct was physically threatening or humiliating or a mere offensive utterance; and (4) whether the conduct unreasonably interfered with Plaintiff's work performance. *Id.* Plaintiff need not prove that her work performance declined or suffered, merely that the harassment made it more difficult for her to do her job. *Harris*, 510 U.S. at 25 (Ginsburg, J., concurring). Nevertheless, while offensive comments may contribute to creating an actionable hostile working environment claim, the mere utterance of an epithet or use of harsh language that engenders offensive feelings in an employee does not sufficiently affect employment conditions so as to violate Title VII. *See Harris,* 510 U.S. at 21-22; *Crawford,* 96 F.3d at 835.

Defendants also cite the Court to *Black v. Zaring Homes*, 104 F.3d 822 (6th Cir. 1997) in support of their argument that Defendant's conduct was not sufficiently severe or pervasive. However, we find the Court's rationale in *Abeita v. Transamerica Mailings, Inc.,* 159 F.3d 246 (6th Cir. 1998) to be more persuasive. The court in *Abeita* distinguished *Black* based upon the fact that the plaintiff in *Abeita* claimed that the defendant's sexual comments were "commonplace," "ongoing," and "continuing." 159 F.3d 246, 252 (6th Cir. 1998). In the present case, Plaintiff alleges that Defendant Meyer had a "generic way of just bringing sex into everything." (Smith Dep. at 87). Plaintiff testified that Defendant Meyer worked epithets such as "fuck you," "suck my dick," and "bitch" into nearly every conversation. (Id.). We construe this to mean that Plaintiff contends that Meyer's conduct was commonplace, ongoing

7

and continuing.

A plaintiff may demonstrate interference with her work performance by showing that a reasonable person subjected to the offensive utterances in question, as well as the plaintiff herself, would find that they altered her working conditions by making it more difficult to do her job. *Harris*, 114 S.Ct. at 372 (Ginsburg, J concurring)(referring to *Davis v. Monsanto Chemical Co.*, 858 F.2d 345, 349 (6th Cir. 1988)). Plaintiff claims that, as a result of Defendant Meyer's conduct, she suffered emotionally and physically. She was unable to sleep or eat, becoming physically ill when attempting to eat. She also testified that she avoided making eye contact at staff meetings in order to avoid any sexual comments being directed at her. (Smith Dep. at 127).

While the mere utterance of an epithet which engenders offensive feelings in an employee does not sufficiently affect employment conditions so as to violate Title VII. *Harris,* 510 U.S. at 21-22, recovery for hostile environment sexual harassment can be based on offensive utterances alone. *See Harris V. Forklift Systems, Inc.*, 1994 WL 792661 (M.D. Tenn. Nov. 9, 1994); *Dillon v. Frank*, 1992 WL 5436, at *5, *7 (6th Cir. Jan. 15, 1992); *Shope v. Bd. of Supervisors of Louden County*, 1993 WL 525598, at *1-2 (4th Cir. Dec. 20, 1993). On the other hand, Defendant correctly points out that Plaintiff cannot base her hostile environment claim on the vulgar language or "shop talk" prevalent in the industry. Defendants, citing the testimony of Karen Bockenstette, a former employee of Defendant, make the argument that such vulgar language and conversations is commonplace in the builder/developer business community. (Deposition of Karen Bockenstette at 48-50). While Plaintiff offers little or nothing to rebut this contention, Defendant Meyer's testimony tends to accomplish just that. When asked about the comments and conversations alleged by Plaintiff, Defendant testified that no such comments or conversations occurred or were tolerated by him and that he, in fact, fired people for such conduct. (Deposition of Douglas Meyer at 128-39). Thus, Defendant Meyer's testimony tends to directly contradict Defendants' argument on this issue.

Plaintiff has complained about several incidents over a four month period. The conduct Plaintiff describes can be categorized as primarily verbal comments, with two incidences of physical contact. As stated above, verbal comments alone may be sufficient to support a hostile environment claim. *Black v. Zaring,* 104 F.3d 822, 826 (6th Cir. 1997). While Plaintiff does not make a particularly strong showing on any one factor listed above, she nevertheless has presented enough evidence to make the

8

resolution of this issue a factual determination, rather than so one-sided that resolution as a matter of law is in order. Accordingly, the question of whether Plaintiff was subjected to an abusive or hostile working environment must be answered by the trier of fact.

### Retaliation- Hostile Environment

Defendants make the cursory statement that Plaintiff's claim of retaliation based upon her complaints of sexual harassment fails because she has failed to establish a prima facie claim for sexual harassment. Plaintiff responds that Defendants have failed to carry their burden of "pointing out to the district court - that there is an absence of evidence to support the nonmoving party's case." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). However, Plaintiff goes on to argue her position with respect to her retaliation claim. Defendants then respond in their Reply memorandum arguing what should have been argued in their original motion.

While Defendants arguably have waived their argument as to the retaliation claim due to their failure to raise it in their original motion for summary judgment, *see Wright v. Holbrook*, 794 F.2d 1152, 1156 (6th Cir. 1986)(argument raised for the first time in party's reply brief will not be considered), Defendants are permitted to rebut arguments made in Plaintiff's Memorandum in Opposition. "It is [generally] impermissible to mention an issue for the first time in a reply brief, because the appellee then has no opportunity to respond." *Knighten v. Commissioner*, 702 F.2d 59, 60 n. 1 (5th Cir.), *cert. denied* 464 U.S. 897 (1983). However, in the present case, the issues Defendants argue were raised by Plaintiff in her memorandum in opposition to summary judgment. Thus, Plaintiff had proper notice that the issues were before the Court. *See Bonds v. C.W. Cox,* 20 F.3d 697, 700-701 (6th Cir. 1994). Furthermore, Plaintiff had ample opportunity during the more than five months since the filing of Defendants' reply brief to submit any supplemental evidence rebutting the government's arguments. *Id.* at 700. Accordingly, the Court will consider all the arguments presented by the parties with respect to Plaintiff's retaliation - sexual harassment claim.

Plaintiff claims retaliation. In such a case, Plaintiff has the burden of proving retaliation by a preponderance of the evidence. Proof of retaliatory motive is crucial. *See Rowe v. Cleveland Pneumatic Co.,* 690 F.2d 88, 92 (6th Cir. 1982); *Chrisner v. Complete Auto Transit, Inc.,*, 645 F.2d 1251, 1257 (6th Cir. 1981). Because of the difficulty of proving motive, the Supreme Court has made available a special order of

proof in employment discrimination cases, the initial stage of which is described as Plaintiff's prima facie case. *Askin v. Firestone Tire & Rubber Co.*, 600 F. Supp. 751, 753-54 (E.D. Ky. 1985) (citing *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248 (1981)), *aff'd without opinion*, 785 F.2d 307 (6th Cir. 1986).

In order to establish a prima facie case of retaliation under Title VII, Plaintiff must produce evidence that: 1) she engaged in activity protected by Title VII; 2) Defendant knew that Plaintiff had engaged in such activity; 3) Defendant made an employment decision adversely affecting Plaintiff; and 4) there is a causal link between Plaintiff's protected activity and Defendant's adverse employment action. *Wrenn v. Gould*, 808 F.2d 493, 500 (6th Cir. 1987); *Jackson v. Pepsi-Cola, Dr. Pepper Bottling Co.*, 783 F.2d 50, 54 (6th Cir. 1986), *cert. denied*, 478 U.S. 1006 (1986). Protected activity consists of opposing any practice made unlawful by Title VII, making a charge, testifying, assisting, or participating in any manner in a Title VII investigation, proceeding or hearing. 42 U.S.C. § 2000e-3 (a). Furthermore, the actions that an employee opposes need not be illegal in fact, rather, all that is required is that the employee have a reasonable belief that the practice complained of violates Title VII. *See Sutton v. National Distillers Products Co.,* 445 F. Supp. 1319 (S.D. Ohio 1978); *Croushorn v. Board of Trustees*, 518 F. Supp. 9 (M.D. Tenn. 1980).

Plaintiff may demonstrate the requisite causal connection by demonstrating disparate treatment or disparate punishment; i.e., that similarly situated employees were not punished for rule violations similar to those committed by Plaintiff. *See Jackson v. RKO Bottlers of Toledo, Inc.*, 743 F.2d 370, 377 (6th Cir. 1984), *appeal after remand, Jackson v. Pepsi-Cola*, 783 F.2d 50 (6th Cir. 1986), *cert. denied*, 478 U.S. 1006 (1986). "Although no one factor is dispositive in establishing a causal connection, evidence . . . that the adverse action was taken shortly after the plaintiff's exercise of protected rights is relevant to causation." *Singfield v. Akron Metropolitan Housing Authority*, 389 F.3d 555, 563 (6th Cir. 2004); *see also Wrenn*, 808 F.2d at 501(an inference of causal connection may also be drawn where a defendant's adverse employment action closely followed plaintiff's protected activity); *but see Balmer v. HCA,* 423 F.3d 606 , 615 (6th Cir. 2005)(quoting *Booker v. Brown & Williamson Tobacco Co.,* 879 F.2d 1304, 1314 (6th Cir. 1989));("the mere fact that an adverse employment decision occurs after a charge of discrimination is not, standing alone, sufficient to support a finding that the adverse employment decision was in retaliation to the discrimination claim."); *see Cooper v. City North Olmstead*, 795 F.2d 1265 (6th Cir. 1986); *Polk v. Yellow Freight Sys., Inc.,* 801 F.2d 190, 197 (6th Cir. 1986).

The establishment of a prima facie case permits the "inference of discrimination

10

. . . because we presume these acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors." *Furnco Construction Corp. v. Waters*, 438 U.S. 567, 577 (1978). Thus, by establishing a prima facie case, plaintiff creates a rebuttable presumption that defendant unlawfully discriminated against him. *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981). This presumption is a procedural device that temporarily ceases plaintiff's burden of producing evidence.

The parties focus their arguments upon the fourth element. Plaintiff claims that her termination[3] occurred in such close proximity to her complaints regarding sexual harassment so as to constitute sufficient evidence of a causal connection for purposes of a prima facie case. Defendants argue that mere temporal proximity is not enough to establish a causal link. We disagree. In the present case, Plaintiff alleges that she complained of what she perceived as sexual harassment to various employees beginning in November of 2001. (Smith Dep., at 80-81, 83-84, 85). Finally, she voiced her complaints to Defendant Meyer at the end of January, 2002. (Id. at 120-21). Plaintiff claims she was then fired on March 13, 2002. (Smith Dep., at 208). We believe that the temporal proximity of these events is significant enough to constitute sufficient evidence of a causal connection. *See Singfield*, 389 F.3d at 563.

Plaintiff also claims that she was treated differently than two other employees for mistakes in negotiating home sales contracts. Defendants contend that the two employees with whom Plaintiff seeks to compare herself are not proper comparables as they are not similarly situated in all relevant aspects. Since Plaintiff does not claim to have direct evidence of discrimination, she must show that the "'comparables' are similarly situated in all respects absent other circumstantial or statistical evidence supporting an inference of discrimination." *Mitchell*, 964 F.2d at 583. However, it is not required that the class of similarly situated employees be in identical employment positions. *Noland*, 869 F. Supp. 529, 531 (N.D. Ohio 1994); *see also Ercegovich v. Goodyear Tire & Rubber Co.,* 154 F.3d 344 (6th Cir. 1998). It is enough to show that other employees had substantially similar duties and responsibilities, reported to the same supervisor or supervisors, and engaged in comparably similar conduct. *Noland,* 869 F. Supp. at 531; *see also Mitchell*, 964 F.2d at 583 n.5. We find that Plaintiff has failed to establish that Darrell Rice and Alisha Detillion were similarly situated in all relevant aspects so as to constitute proper comparables.

---

[3] Whether Plaintiff was terminated or quit voluntarily is disputed by the parties. However, Plaintiff makes no argument that she was constructively discharged. We will assume, for the sake of summary judgment only, that Plaintiff was terminated.

The evidence submitted indicates that Mr. Rice was an employee who had successfully completed his probationary period at the time Plaintiff was hired. (Deposition of Brenda Sides at 132-33). The evidence indicates that Mr. Rice forfeited his commission on two occasions due to mistakes in negotiating sales contracts. (Sides Dep., at 49; Meyer Dep., at 222). At the time of these mistakes, one of which occurred after Plaintiff had left her employment with Defendant, Mr. Rice had been employed with Defendant for several years and was not under Brian Weichert's supervision. (Id.; Deposition of Brian Weichert at 88-89). As a result of his mistakes, he agreed to forfeit his commission. (Meyer Dep., Vol. II at 222). With respect to Alisha Detillion, the evidence reflects only one occasion where her commission was forfeited as a result of a miscalculation of sale price. (Weichert Dep., at 83-84, 86-87). Ms. Detillion, likewise, was not under Brian Weichert's supervision at the time of this mistake. (Deposition of Brian Weichert, Vol. II at 90). Moreover, this incident arose after Plaintiff had left Defendant's employ. (Weichert Dep., at 83).

In contrast to the three incidences outlined above, Defendants claim that Plaintiff repeatedly afforded her customers free upgrades without authorization. From the evidence submitted, we are not convinced that Mr. Rice and Ms. Detillion's conduct was sufficiently similar to Plaintiff's alleged misconduct. There is no evidence that their conduct was deliberate or repeated conduct. Rather, the evidence merely indicates that Mr. Rice made mistakes on two occasions which he admitted and for which he agreed to reimburse the company. There is no indication that these mistakes were anything other than two discrete incidents which were quickly remedied. Moreover, whereas Ms. Detillion's mistake arose from a miscalculation due to the use of outdated information, Plaintiff's alleged negotiation problems were the result of deliberate conduct, rather than a mere miscalculation.[4] The Court agrees with Defendants' contention that Mr. Rice's tenure alone may furnish a mitigating factor that would justify differential treatment. However, when viewed in conjunction with the other distinguishing facts outlined above, we find that Mr. Rice  is not similarly situated to Plaintiff in all relevant aspects so as to constitute a proper comparable. Similarly, as outlined above, we find that Ms. Detillion does not constitute a proper comparable. Despite this finding, because we find that the temporal proximity of Plaintiff's termination was significant enough to constitute sufficient evidence of a causal connection, we find that Plaintiff has established a

---

[4] Plaintiff claims, and Defendant disputes, that the "bump outs" which she gave to the home buyers were authorized by Brian Weichert. Nonetheless, the conduct is not remotely similar to an honest, but perhaps negligent, use of outdated information.

prima facie case of retaliation based upon her complaints of sexual harassment.

Once plaintiff establishes a prima facie case, the burden of going forward shifts to defendant to articulate a legitimate, nonretaliatory reason for its action. *Board of Trustees v. Sweeney*, 439 U.S. 24 (1978); *Wrenn v. Gould*, 808 F.2d 493, 500 (6th Cir. 1987), *cert. denied*, 108 S. Ct. 1032 (1988). The ultimate burden of persuasion never shifts from plaintiff. *Wrenn*, 808 F.2d at 501. Defendant need not persuade the court it was actually motivated by nonretaliatory reasons. If Defendant's evidence raises a genuine issue of fact as to whether it intentionally retaliated against Plaintiff, Defendant has satisfied its burden of going forward. *United States Postal Service Bd. of Governors v. Aikens*, 460 U.S. 711 (1983); *Wrenn*, 808 F.2d at 501.

Where a defendant articulates a legitimate reason for its action, the presumption of discrimination "drops from the case," *Burdine*, 450 U.S. at 255, n.10, "and the factual inquiry proceeds to a new level of specificity." *Id.* at 255. *See also Aikens,* 460 U.S. at 714-15. Although the presumption of retaliation, as a procedural device, drops from the case at this point, a permissible inference of retaliation may still be drawn by the trier of fact from the evidence introduced in plaintiff's case-in-chief. *Askin*, 600 F. Supp. at 754, 755. Plaintiff retains the burden of persuasion and must prove by a preponderance of the evidence that her protected activity was a significant factor in Defendant's employment action. *Polk v. Yellow Freight System*, 876 F.2d 527, 531(6th Cir. 1989); *Batts v. NLT Corp.*, 844 F.2d 331, 336 (6th Cir. 1988). Plaintiff may succeed either directly by persuading the court that a retaliatory reason more likely than not was one of the reasons for discharge, *id.*, or indirectly by showing that the Defendant's proffered explanation is unworthy of credence. *Burdine*, 450 U.S. at 256; *Batts*, 844 F.2d at 501. Plaintiff need not prove that the discharge would not have occurred absent the protective activity. *Polk*, 876 F.2d at 531.

Defendants argue that Plaintiff has failed to rebut their legitimate non-retaliatory reasons for terminating her[5] and for withholding commissions. Defendants contend that insubordination and/or failure to follow company policies provides valid cause for disciplining or terminating an employee. However, the deposition testimony from Defendant Meyer raises genuine issues of material fact as to whether Defendants' stated reasons are pretextual such that summary judgement is not

---

[5] Again, we note that the issue of whether Plaintiff was terminated or quit is in dispute. For purposes of this motion, we assume that Plaintiff was terminated.

appropriate.

## Fair Housing Act - Steering

As an initial matter, the Court notes that Plaintiff's Amended Complaint (Doc. 8, ¶¶ 34-35, Count IV) does not specifically assert a claim based on steering in violation of the Fair Housing Act ("FHA"), 42 U.S.C. § 3604, *et seq.* as argued by both counsel. Plaintiff's Amended Complaint specifically states that "Defendants' actions constitute retaliation for protesting discrimination, steering, . . . ." (Id. at ¶ 35). However, Defendants, in their Motion for Summary Judgment, argue the underlying merits of a steering claim in addition to Plaintiff's stated retaliation claim. Plaintiff, likewise, argues both a steering claim *and* retaliation claim under the Fair Housing Act.

The Supreme Court explained in *Swierkiewicz v. Sorema, N.A.,*, the notice pleading standard under the Federal Rules of Civil Procedure relies on liberal rules of civil discovery and summary judgment motions "to define disputed facts and issues and to dispose of unmeritorious claims." 534 U.S. 506, 512-13 (2002). Obviously, Plaintiff believes she has stated a claim based on steering. Defendants, based upon their lengthy arguments with respect to the merits of Plaintiff's FHA claim, apparently believe so too. Accordingly, we find that allowing Plaintiff to assert a claim under the Fair Housing Act based on steering and allowing Plaintiff the opportunity to amend her Complaint to reflect such under Rule 15 does not subject Defendants to unfair surprise. *See Tucker v. Union of Needletrades, Industrial, and Textile Employees*, 407 F.3d 784 (2005).

Any "aggrieved person" is authorized to bring a civil action pursuant to 42 U.S.C. § 3613. The FHA defines an "aggrieved person" as one who "1) claims to have been injured by a discriminatory housing practice; or 2) believes that such person will be injured by a discriminatory housing practice that is about to occur." 42 U.S.C. § 3602(i); *Hamad v. Woodcrest Condominium Association*, 328 F.3d 224 (6th Cir. 2003).

Defendants argue that Plaintiff lacks standing to bring a steering claim under the FHA as she cannot show that she is an "aggrieved person." The Supreme Court has held that Congress intended standing under § 812 of the FHA to extend to the full limits of Article III's "case" or "controversy" requirement. *Havens v. Realty Corp. v. Coleman*, 455 U.S. 363, 372 (1982). "Thus, the sole requirement for standing to

sue under § 812 is . . . that the plaintiff alleged that as a result of the defendant's actions he has suffered 'a distinct and palpable injury.'" *Id.* Plaintiff argues that, as a result of Defendants' discriminatory conduct, she lost her commission on the various sales to minority buyers which Defendants either renegotiated after she was terminated or which were rejected. Plaintiff has cited the Court to no authority within the Sixth Circuit clearly on point with respect to the particular facts herein and we can find none. However, the Seventh Circuit has held that "organizations responsible for advancing both the professional ethics and the economic well being of the individual realtors" had standing to sue under the FHA. *See South-Suburban Hous. Ctr. v. Greater South-Suburban Bd. of Realtors*, 935 F.2d 868, 882 (7th Cir. 1991). Extrapolating from this rationale, we find it reasonable that, if an organization representing individual realtors has standing to pursue an FHA claim based upon economic injury from lost sales/commissions, an individual realtor would likewise have standing to bring such a claim. While we find Plaintiff's standing argument to be rather tenuous, we find, nonetheless, that Plaintiff has sufficiently alleged the Article III minima of injury in fact. Accordingly, we find that Plaintiff has standing to bring a steering claim under the FHA.

The FHA prohibits both direct discrimination and practices with significant discriminatory effects. Its purpose is to promote equal housing opportunities and to eliminate segregated housing. The Act, therefore, makes it illegal to "refuse to sell or rent . . . or otherwise make unavailable or deny, a dwelling to any person because of race . . . or national origin." 42 U.S.C. 3604. Courts have construed the "otherwise make unavailable or deny" language contained in the statute to include such practices as racial steering. *Seldon Apartments v. H.U.D.*, 785 F.2d 152, 159 (6th Cir.1986).

In order to establish a prima facie case of steering under the FHA, Plaintiff must show that 1) the buyers are members of a racial minority; 2) they applied for and were qualified to purchase property; 3) they were rejected; and 4) the property remained available thereafter. *Seldon*, 785 F.2d at 159. Plaintiff need not prove that race was the sole reason, but rather need show only that race was one factor for the discriminatory action. *Green v. Century 21*, 740 F.2d 460, 464 (6th Cir. 1984).

While citing several examples of what she perceived as racial discrimination and steering in violation of the FHA, Plaintiff primarily focuses her argument on two sets of minority buyers whom she believes were discriminated against, the Parija and Xie families. Plaintiff claims that these buyers sought to purchase homes from Defendants and were qualified. Plaintiff claims, however, that Defendants rejected

the Parijas' first attempt to buy a house, ultimately renegotiating their contract for a lower sales price.[6] (Weichert Dep. Vol. II, at 12). Plaintiff further claims that Defendants rejected the Xie's contract and renegotiation attempts failed. (Weichert Dep. Vol II, at 12-13). Following the rejections of the Xie's contract, lots remained available. (Id.). Defendants concede that Plaintiff has met her initial burden of establishing a prima facie case and instead argue that Plaintiff cannot establish that Defendants stated reasons for renegotiating the sales contracts were pretextual. (Doc. 40, at 34). Defendants argue that the profit margin figures produced with respect to these sales and others do not indicate unreasonable bargaining with minorities. Defendants point out that the Parijas ultimately bought a home from Defendants on terms which closely replicate terms afforded to the Tye family, non-minority customers who bought a similar model home through Plaintiff during the same time frame. (Weichert Dep., at 116-17).

Plaintiff, in contrast argues that Defendants' disparate treatment of her minority customers in sales negotiations had an "untoward effect on a reasonable person under the circumstances." *See Height v. Hilltop*, 774 F.2d 135, 140 (6th Cir. 1985). Plaintiff testified that she negotiated the sale of homes with three potential buyers during the same time frame, the Parijas, Xies, and Tyes. (Smith Dep., at 188, 190). The Tye family was Caucasian. (Id. at 190). Plaintiff claims that, in negotiations with the Tyes, Weichert stated that the "two-foot bump-out" was an included feature." (Id.). However, this feature was only offered as an additional option to the Parija and Xie families (Deposition of Soubhagya Parija, at 20-21, 23; Deposition of Sherry Xie, at 51). The testimony elicited from both families indicated that they felt that the difficulties experienced with respect to the renegotiation of their contracts was due to their race. (Parija Dep., at 43-44; Xie Dep. at 32). When taken in conjunction with specific racial comments allegedly made by Defendant Meyer, Plaintiff argues that she has established that Defendants stated reasons for renegotiating these contracts are pretextual. We find that the deposition testimony elicited by both parties raises genuine issues of material fact as to whether Defendants' stated reasons are pretextual such that summary judgement is not appropriate.

---

[6] Defendants revisit this issue in their Reply brief wherein they point to the fact that the Parijas ultimately purchased the home they originally sought and therefore, were not rejected. However, we find that Plaintiff has presented sufficient evidence to create a genuine issue of material fact with respect to the Parijas' rejection. *Accord Heights Community Congress v. Hilltop Realty, Inc.,* 774 F.2d 135, 140 (6th Cir. 1985); *see also Patterson v. Guttman*, No. 98-4538, 2000 WL 799320 at 5-6 (6th Cir. June 5, 2000).

## Retaliation - Fair Housing Act

Plaintiff also claims that she was retaliated against in response to her complaints regarding what she believed to be racial discrimination and steering in violation of Title VII, O.R.C. §4112.01, et. seq., and the Fair Housing Act, 42 U.S.C. §3604, *et. seq*.

The burden shifting analysis employed, *supra* at pp. 10-11, 13, is equally applicable to Plaintiff's retaliation claim under the FHA. *Regional Economic Community Action Program, Inc. v. City of Middletown*, 294 F.3d 35, 54 (2nd Cir. 2002); *San Pedro Hotel Co., Inc. v. City of Los Angeles*, 159 F.3d 470, 477 (9th Cir. 1998). Defendants argue that Plaintiff has failed to establish that Defendants' stated reasons for disciplining and terminating her are pretextual. Both parties apply the same argument with respect to this claim as presented with respect to Plaintiff's retaliation - hostile environment claim.

We note that the temporal proximity of Plaintiff's termination to be even more significant with respect to this retaliation claim. Plaintiff alleges that during the meeting with Defendant Meyer which concluded with her termination, she challenged Defendant Meyer's discriminatory practices. (Smith Dep., at 199, 208). Thus, for the same reasons as stated above, *see supra* at p. 13, we find that Plaintiff has established a prima facie case of retaliation under the FHA.

Defendants argue that Plaintiff has failed to rebut their legitimate non-retaliatory reasons for terminating her and for withholding commissions. Defendants again reiterate that insubordination and/or failure to follow company policies provides valid cause for disciplining or terminating an employee. However, the deposition testimony from Defendant Meyer, as well as other witnesses' testimony, raises genuine issues of material fact as to whether Defendants' stated reasons are pretextual such that summary judgement is not appropriate.

## Breach of Contract

Plaintiff brings a breach of contract claim with respect to her lost commissions. There is no dispute among the parties that the commission rate sheet in evidence explained Defendants' methodology of paying commissions to sales persons. (Meyer Dep., at 87, Ex. 9; Weichert Dep., at 18; Sides Dep., at 39-40). The question is whether the commission sheet creates an implied contract with respect to how

commissions would be paid such that Plaintiff can argue that Defendants breached such agreement. We find that Plaintiff has presented sufficient evidence that the commission policy of Defendants, as evidenced by the commission sheet in the sales training manual, created an implied at-will contract between the parties. *See Carter v Warner Interior, Inc.,* No. 71797, 1997 WL 691179 at *3 (Ohio Ct. App. Nov. 6, 1997)(citing *Nichols v. Waterfield Financial Corp.,* 577 N.E.2d 422 (Ohio 1989)). The court in *Carter* reasoned that, because plaintiff was an at-will employee, the employer could prospectively change the terms and conditions of the at-will employment contract, without consideration. *Id.* at *3. However, while the employer was free to change the terms concerning commissions, the new policy became the at-will contract between the parties. *Id.*

The deposition testimony from Defendant Meyer, as well as other witnesses' testimony, raises genuine issues of material fact as to whether a contract existed with respect to commissions and whether Defendants breached such. Accordingly, we find that summary judgment in Defendants' favor is not appropriate.

**Counts Three, Six, Seven, and Eight**

In response to Defendants' motion, Plaintiff offers no arguments or evidence to rebut Defendants' arguments with respect to her claims for racial harassment and hostile environment (Count Three), promissory estoppel (Count Six), unjust enrichment (Count Seven) and public policy wrongful termination (Count Eight). Plaintiff has, therefore, abandoned these claims by failing to carry her burden on summary judgment. Accordingly, we find that summary judgment is appropriate in Defendants' favor with respect to Counts Three, Six, Seven and Eight.

**IT IS THEREFORE ORDERED THAT**

1)  Defendants' Motion for Summary Judgment (Doc. 40) be DENIED in part and GRANTED in accordance with the decision herein.

2)  Counts Three, Six, Seven and Eight of Plaintiff's Amended Complaint (Doc. 8) are DISMISSED.

3)  Trial shall proceed on Counts One, Two, Four and Five of Plaintiff's Amended Complaint (Doc. 8)

SO ORDERED.


Date:  3/3/2006            s/Timothy S. Hogan
                          Timothy S. Hogan
                          United States Magistrate Judge



J:\SMITHLE\SUMJUDG\Meyer.msj.wpd